IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT W. CLOUGH, II, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>PLYMOUTH ROCK MANAGEMENT COMPANY OF NEW JERSEY and JOHN DOE CORPORATION<br><br>        Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT |

**CLASS ACTION COMPLAINT**

Plaintiff Robert W. Clough, II (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

**Preliminary Statement**

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Robert W. Clough, II ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S.

3. Plymouth Rock Management Company of New Jersey ("Plymouth Rock") retained a vendor, John Doe Corporation ("John Doe"), who made telemarketing calls to telephone numbers listed on the National Do Not Call Registry, like Mr. Clough's, which is prohibited by the TCPA.

4. Indeed, Plymouth Rock's vendor made these calls on its behalf even though Mr. Clough had previously filed a lawsuit against Plymouth Rock for the same conduct and for calling the same number registered on the National Do Not Call Registry.

5. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

6. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

7. Plaintiff Robert W. Clough, II is a New Hampshire resident.

8. Defendant Plymouth Rock Management Company of New Jersey is a domestic corporation with its principal place of business in Berkley Heights, NJ 07922.

9.      Defendant John Doe Corporation is a vendor for Plymouth Rock that makes telemarketing calls for it.

## Jurisdiction & Venue

10.     The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11.     This Court has jurisdiction over the Defendants. Plymouth Rock is registered in this District. It also regularly engages in business in this District, including soliciting business from this District for its insurance products. John Doe regularly engages in business in this District, including making telemarketing calls from this District, as it did with the Plaintiff.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing calls to the Plaintiff occurred in this District.

## The Telephone Consumer Protection Act

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

14.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

17. Plymouth Rock is an insurance company that offers automobile insurance products.

18. To generate business through sales, Plymouth Rock relies on telemarketing.

19. Plymouth Rock has relied on third parties to engage in that telemarketing, including John Doe.

<u>The Calls to Mr. Clough</u>

20. Plaintiff Clough is a "person" as defined by 47 U.S.C. § 153(39).

21. Plaintiff's residential telephone number is (603) 731-XXXX.

22. Mr. Clough has listed that number on the National Do Not Call Registry for more than a year prior to the calls he received in this case.

23. Mr. Clough uses the number for personal, residential, and household reasons.

24. The number is not associated with any business.

25. John Doe placed repeated telemarketing calls to the Plaintiff's number on Plymouth Rock's behalf.

26. This included a call to the Plaintiff on July 29, 2021.

27. When the Plaintiff answered this call, the caller identified themselves as calling from Plymouth Rock.

28. The caller was soliciting for insurance products.

29. The Plaintiff was not interested and terminated the call.

30. The Plaintiff believes he was also called on August 4th and 5, 2021.

31. Finally, during an August 11, 2021 call, the Plaintiff listened to the telemarketer enough to conclusively identify the company contacting him.

32. The call promoted Plymouth Rock's insurance services.

33. The caller referenced the same inaccurate lead information that resulted in the first lawsuit filed by Mr. Clough.

34. Confirming that the call was offering Plymouth Rock insurance services, a series of questions about insurance needs were asked.

35. An e-mail was then sent to Mr. Clough from "Marck" with a quote proposal.

36. A call back number was provided of (973) 224-5899.

37. This is a telephone number for Plymouth Rock.

38. The e-mail was from [noreply-agentweb@plymouthrock.com](mailto:noreply-agentweb@plymouthrock.com).

39. This is a domain owned by Plymouth Rock.

40. All of the telemarketing calls were made to promote Plymouth Rock's goods and services.

41. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured

Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

## Plymouth Rock's Liability for John Doe's Conduct

42. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

43. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

44. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

45. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Plymouth Rock may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

46. Plymouth Rock knowingly and actively accepted business that originated through the illegal telemarketing calls from John Doe.

47. Plymouth Rock, through access granted to John Doe to its system, had the ability to identify the fact that John Doe was calling individuals on the National Do Not Call Registry.

48. Indeed, despite the receipt of a prior TCPA lawsuit from the Plaintiff, Plymouth Rock continued to do business with John Doe and contact the Plaintiff.

49. Moreover, Plymouth Rock maintained interim control over the actions of the party that made the call.

50. For example, Plymouth Rock gave interim instructions to John Doe by providing (a) the states that they were permitted to call and (b) the script that John Doe would have to use.

51. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Statement

52. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of proposed Class of all other persons or entities similarly situated throughout the United States.

53. The Class of persons Plaintiff proposes to represent is tentatively defined as:

**National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of

Defendants (3) within a 12-month period, (4) from four years prior to the filing of the Complaint to trial.

54. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

55. The Class as defined above are identifiable through phone records and phone number databases.

56. The potential members of the Class number at least in the thousands.

57. Individual joinder of these persons is impracticable.

58. The Plaintiff is a member of the Class.

59. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

   (a) whether Plymouth Rock is vicariously liable for the conduct of John Doe;

   (b) whether John Doe systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

   (c) whether Defendants' conduct constitutes a violation of the TCPA;

   (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

60. Plaintiff's claims are typical of the claims of members of the Class.

61. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

63. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

64. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

65. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

66. The Defendants' violations were negligent, willful, or knowing.

67. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

68. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as a representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, to any residential telephone number in the future.

F. An award to Plaintiff and the Class of damages, as allowed by law; and

G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

Dated: October 27, 2021

PLAINTIFF,
By his attorneys

/s/ Ari H. Marcus
Ari H. Marcus, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
Tel: (732) 695-3282
Email: ari@marcuszelman.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com
*Subject to Pro Hac Vice*

Attorneys for Plaintiff